MARK PEARSON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*, (Clover Township Fire Protection District, Appellee).

Third District   No. 3—00—0153WC

Opinion filed January 26, 2001.—Rehearing denied February 28, 2001.

HOLDRIDGE, J., dissenting.

Christopher R. Doscotch and Ralph D. Davis, both of Janssen Law Center, of Peoria, for appellant.

Brad A. Elward, Karen L. Kendall, Bradford B. Ingram, and Craig S. Young, all of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The claimant, Mark Pearson, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1994)), seeking benefits for injuries he received on October 7, 1994, while assisting firefighters from the Clover Township Fire Protection District (District) in putting out a farm field fire. Following

a hearing, an arbitrator issued a decision denying the claimant benefits under the Act, finding that no employer/employee relationship existed between the claimant and the District at the time of his injury. On review, the Industrial Commission (Commission) issued a unanimous decision affirming and adopting the arbitrator's decision. Thereafter, the claimant sought judicial review of the Commission's decision in the circuit court of Henry County. The circuit court confirmed the Commission's decision, and this appeal followed.

The following facts were established from the evidence presented at the arbitration hearing.

The claimant was one of the District's volunteer firemen from March 1993 through March 8, 1994. On March 8, 1994, he was terminated from that position for nonattendance at meetings.

On October 7, 1994, there was a farm field fire in rural Clover Township. The claimant and his father saw the fire and reported it to the District. After reporting the fire, the claimant and his father went to the site of the fire and waited for the District's firemen to arrive. When the firemen arrived, the claimant directed them to a gate where they could get into the field to fight the fire. The claimant admitted that, after he directed the firemen to the gate, no one asked him to remain at the scene. Nevertheless, the claimant began stomping the fire in the area of the gate.

Terry Nelson, one of the firemen at the scene, testified that the claimant offered to get his farm tractor and disk and assist in putting out the fire by disking the field. According to the claimant, Nelson asked him if he would help fight the fire with his tractor and disk. Nelson testified that he called the District's assistant fire chief, Donald McDowell, and informed him of the claimant's offer. McDowell testified that he told Nelson that the claimant's assistance "would be appreciated," and he told Nelson to have the claimant go around the fire with his tractor and disk. McDowell also testified that the fire could have been extinguished without the claimant's assistance.

According to the claimant, he went to his farm, got his tractor and disk, and returned to the scene of the fire. When he returned, several firemen directed him to the south end of the field. The claimant began disking the ground in an effort to extinguish the fire. None of the District's firemen directed the manner in which the claimant undertook to disk the field.

While the claimant was disking the field, he drove his tractor into a deep washout. His left foot was pinned between the clutch and the floorboard, resulting in a chronic Lisfranc injury. Nevertheless, the claimant continued to assist in extinguishing the fire.

The claimant admitted that he was not paid for his services and

had no expectation of being paid. He testified that, after Nelson requested that he help fight the fire, he provided his services out of concern for his neighbors and the community. The claimant never received any payment from the District after his termination on March 8, 1994.

After the hearing, the arbitrator issued a decision denying the claimant benefits under the Act, finding that he failed to prove that an employer/employee relationship existed between himself and the District at the time of his injury. On review, the Commission issued a unanimous decision affirming and adopting the arbitrator's decision. The circuit court confirmed that decision.

On appeal, the claimant argues that the Commission's finding that no employer/employee relationship existed is against the manifest weight of the evidence and erroneous as a matter of law. He further contends that the emergency doctrine dictates a finding that he had an employer/employee relationship with the District.

■ In a workers' compensation case, the claimant has the burden of proving, by a preponderance of the evidence, all of the elements of his claim (*O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221 (1980)), including the existence of an employer/employee relationship between himself and the entity from which benefits are sought (*Rangler Motor Sales v. Industrial Comm'n*, 93 Ill. 2d 66, 71-72, 442 N.E.2d 903 (1982)). When the evidence is conflicting and the facts subject to diverse interpretation, the question of whether such a relationship existed is one of fact to be resolved by the Commission. *Rangler Motor Sales*, 93 Ill. 2d at 71-72. When, however, there is no conflict in the evidence and but one conclusion can reasonably be drawn therefrom, the existence of an employer/employee relationship can be decided as a question of law. *Tooley v. Industrial Comm'n*, 236 Ill. App. 3d 1054, 1056, 603 N.E.2d 145 (1992).

■ Section 1(b)(2) of the Act defines an employee as "[e]very person in the service of another under any contract of hire, express or implied, oral or written." 820 ILCS 305/1(b)(2) (West 1994). Although this definition is to be broadly construed, there can be no employer/employee relationship and, therefore, no liability under the Act absent a contract for hire, either express or implied. *Goodrick v. Industrial Comm'n*, 237 Ill. App. 3d 885, 888, 605 N.E.2d 120 (1992).

In the instant case, the Commission determined that no employer/employee relationship existed between the claimant and the District. The claimant argues both that the Commission's decision is against the manifest weight of the evidence and that the Commission erred in its finding as a matter of law. We disagree.

■ In *Board of Education v. Industrial Comm'n*, 53 Ill. 2d 167, 171, 290 N.E.2d 247 (1972), our supreme court held:

"The underlying purpose of workmen's compensation legislation in this and other States is to provide financial protection in various forms, including the restoration of lost wages, for workers whose earning power is interrupted or terminated as a consequence of injuries arising out of and in the course of their employment. [Citations.] Consistent with the philosophy of the legislation which assumes that a worker is gainfully employed at the time of his injury, it is generally recognized that a true employer-employee relationship does not exist in the absence of the payment or expected payment of consideration in some form by employer to employee. As a consequence, the workmen's compensation statutes throughout this country have uniformly been construed to exclude from coverage purely gratuitous workers who neither receive, nor expect to receive, pay or other remuneration for their services. [Citations.]"

■ In this case there is no dispute; the claimant neither received nor expected payment for his services in assisting the District's firemen. As the claimant testified, he provided his services purely out of concern for his neighbors and the community. The record in this case reveals that the Commission did not apply an improper standard to determine whether the claimant was an employee of the District at the time of his injury, and its determination that he was not the District's employee is not against the manifest weight of the evidence. Further, the claimant's reliance upon the Illinois Supreme Court's decision in *Village of Creve Coeur v. Industrial Comm'n*, 32 Ill. 2d 430, 206 N.E.2d 706 (1965), in support of his contention that an employer/employee relationship existed between himself and the District is misplaced. Unlike the circumstances present in this case, the injured volunteer fireman who was the claimant in *Village of Creve Coeur* was compensated for his services, a fact which the supreme court specifically noted in its decision. *Village of Creve Coeur*, 32 Ill. 2d at 433.

The claimant also argues that the facts of this case support the application of the emergency doctrine to find an employer/employee relationship between himself and the District. It is true, as the claimant contends, that the emergency doctrine was acknowledged in *Wolverine Insurance Co. v. Jockish*, 83 Ill. App. 3d 411, 403 N.E.2d 1290 (1980). However, as the District points out, the doctrine has never been adopted or applied in Illinois.

In this case, we need not decide the question of whether Illinois will embrace the emergency doctrine and apply the theory of a quasi-contract of employment to bring an individual under the protection of the Act when he is injured while risking his life in order to protect the lives and health of others. See *Conveyors Corp. of America v. Industrial Comm'n*, 200 Wis. 512, 228 N.W. 118 (1930); *Tipper v. Great Lakes*

*Chemical Co.*, 281 So. 2d 10 (Fla. 1973). As was the case in *Wolverine Insurance Co.*, "the life-threatening urgency which characterizes the emergency doctrine cases is absent from the facts before us." *Wolverine Insurance Co.*, 83 Ill. App. 3d at 414. Although the facts in this case reflect that the farm field fire which the claimant assisted in extinguishing spread rapidly and presented a risk to the crops on adjacent farms, there is no evidence that it presented a life-threatening situation. Further, the claimant was not called to the scene of the fire to assist the firemen and, as McDowell testified, the fire could have been extinguished without the claimant's assistance. These latter facts distinguish this case from *Conveyors Corp. of America* and *Tipper*.

For the foregoing reasons, we affirm the circuit court's order confirming the Commission's decision.

Affirmed.

McCULLOUGH, P.J., and COLWELL and RARICK, JJ., concur.

JUSTICE HOLDRIDGE, dissenting:

I would find that the Commission erred in holding that no employer/employee relationship existed. I therefore respectfully dissent.

As the majority correctly notes, the key issue in this matter is whether an oral contract for hire can be implied from undisputed facts in the record. I would find that the record supports the finding of a contractual relationship and the Commission's determination to the contrary is clearly erroneous.

Whether an employer/employee relationship exists in any matter is a difficult question. There can be no hard and fast rule for making such a determination and the facts of each case are the only guides. *Bauer v. Industrial Comm'n*, 51 Ill. 2d 169, 171 (1972). As the court noted in *Bauer*:

> " 'No single facet of the relationship between the parties is determinative, but many factors, such as the right to control the manner in which the work is done, the method of payment, the right to discharge, the skill required in the work to be done, and the furnishing of tools, materials or equipment have evidentiary value and must be considered. [Citation.] Of these factors, the right to control the work is perhaps the most important single factor in determining the relation [citation], inasmuch as an employee is at all times subject to the control and supervision of his employer, whereas an independent contractor represents the will of the owner only as to the result and not as to the means by which it was ac-

complished. [Citations].' " *Bauer*, 51 Ill. 2d at 171-72, quoting *Coontz v. Industrial Comm'n*, 19 Ill. 2d 574, 577-78 (1960).

In applying these principles to the facts in the instant matter, it is abundantly clear that the claimant's actions in fighting the fire were under the control of the Fire Protection District (the District). The record shows that, although claimant arrived at the fire before any Fire Protection District personnel, he made no attempts to put the fire out himself. He waited for the firefighters to do the job of controlling the fire. Even after the firefighters arrived and began to make efforts to control the fire, claimant made no efforts on his own to control the fire. At some point after the firefighters arrived and began the task of controlling the fire, claimant offered his tractor and disk to assist in putting out the fire. He was then asked by Terry Nelson, who was in charge of the firefighting operation at the scene, to provide assistance by disking a firebreak to stop the further spread of the fire.

It is noteworthy that prior to authorizing claimant to disk the firebreak, Nelson sought authorization from Assistant Fire Chief Donald McDowell. McDowell specifically authorized claimant's assistance in fighting the fire, instructing Nelson to have claimant go around the fire with his tractor and disk. Claimant received further instruction on exactly where in the field he was supposed to begin his disking. It is also noteworthy that McDowell believed he could have ordered claimant to stop disking the firebreak at any time.

From this evidence, it is clearly apparent that claimant's actions in fighting the fire were controlled by the District. To find otherwise, *i.e.*, that claimant was fighting the fire independent of the firefighting actions of the District, would be against the manifest weight of the evidence. It is also clearly apparent that the District retained the authority to discharge claimant from the duties he had undertaken at Nelson's request.

In finding that claimant was not an employee, the majority relied heavily on the fact that claimant received no pay or other remuneration for his services. However, in light of the fact that the other firefighters received a total compensation of $8 each, I believe that the majority gives far too much weight to this single factor.

As I would find that the Commission's finding that claimant was not an employee of the District is against the manifest weight of the evidence, I would not reach the issue of whether the emergency doctrine applies.