MICHAEL ESPOSITO, Plaintiff-Appellant, v. DIOR BUILDERS *et al.*,
Defendants-Appellees.

First District (5th Division)   No. 1—94—0541

Opinion filed July 21, 1995.

Paul W. Grauer & Associates, of Schaumburg (William S. Robinson and Paul W. Grauer, of counsel), for appellant.

Wiedner & McAuliffe, Ltd., of Chicago (Thomas W. Weber, of counsel), for appellees.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Michael Esposito, appeals from the trial court's order of January 10, 1994, granting defendants Dior Builders, Dior Realty, Inc., Dior Builders & Realty, Inc. (defendant Dior Builders, Inc.), Peter DiIorio, and Jim Hansen's motion for summary judgment in their favor on plaintiff's claims under the Structural Work Act (see 740 ILCS 150/1 *et seq.* (West 1992)) and for damages caused by defendants' negligence. On appeal, plaintiff contends that the trial court erred in granting summary judgment in favor of defendants.

We affirm.

BACKGROUND

On March 11, 1992, plaintiff filed a two-count complaint against defendants seeking recovery for injuries, mental anguish, medical treatment, as well as lost wages. In particular, plaintiff alleged that on or about March 12, 1990, defendants were engaged in the erection, construction, and painting of a building and structure located on lot 16 of the Glencrest subdivision in Inverness, Illinois. While plaintiff was engaged in the painting of the building at the construction site, plaintiff fell from a ladder and sustained multiple injuries. Subsequently, plaintiff had surgery on his back to remove a herniated disc and had surgery on his right shoulder.

Count I of the complaint sought damages for defendants' alleged violation of the Structural Work Act (see 740 ILCS 150/1 *et seq.* (West 1992)) and averred that because defendants failed to provide plaintiff with an appropriate ladder or support for painting and failed to warn plaintiff regarding the placement of the ladder, plaintiff fell

to the floor and sustained multiple injuries. Count II of the complaint claimed that defendants were liable to plaintiff under a negligence theory because defendants failed to: (1) provide plaintiff with an adequate ladder; (2) provide any safeguards or warnings relative to the risk of falling from the support upon which plaintiff was working; and (3) provide plaintiff with a safe place to work and, as a result, plaintiff was working on a temporary support or ladder which was unsafe and caused him to fall.

On February 16, 1993, defendants filed their answer to plaintiff's complaint. Relative to count I of plaintiff's complaint, defendants admitted that plaintiff was a painter at the construction site at the relevant time, but denied the applicability of the Structural Work Act to plaintiff's allegations. In addition, defendants denied the material allegations of count II of the complaint.

On February 16, 1993, defendants also filed a motion to dismiss plaintiff's complaint. In the motion, defendants maintained that plaintiff's complaint should be dismissed because the Workers' Compensation Act (the Act) (see 820 ILCS 305/1 *et seq.* (West 1992)) prohibits plaintiff from bringing a common law or statutory cause of action against defendant Dior Builders, Inc., and because defendants Peter DiIorio and Jim Hansen are co-workers of plaintiff.

On March 23, 1993, plaintiff filed a response to defendants' motion to dismiss. In the response, plaintiff claimed that, at the time of his fall, plaintiff was an uninsured subcontractor who was able to recover worker's compensation benefits from defendants under the Act even though he was not a common-law employee. Plaintiff also averred that his complaint against defendants Peter DiIorio and Jim Hansen should not be dismissed on the ground that they were plaintiff's co-workers because plaintiff was not an employee of defendants and, as a result, defendants Peter DiIorio and Jim Hansen were not plaintiff's co-workers. In addition, plaintiff filed an affidavit in support of plaintiff's response to defendants' motion to dismiss wherein plaintiff maintained that on March 12, 1990, he was not an employee of any of defendants, but that he was a subcontractor performing painting services at the time of his fall.

Subsequently, defendants requested leave to withdraw their motion to dismiss. The trial court granted defendants' request.

However, previously, on April 5, 1990, plaintiff had filed an application for adjustment of claim with the Illinois Industrial Commission (the Commission) wherein he alleged that, at the time of his fall, he was employed by defendant Dior Builders, Inc. On April 30, 1991, pursuant to a request for a hearing under the Act, plaintiff's counsel executed a stipulation which provides, in pertinent part:

"Petitioner claims that the Petitioner and Respondent [Dior Builders., Inc.,] were on the 12th day of March, 1990, operating under the provisions of the Workers' Compensation and Occupational Diseases Act of the State of Illinois and that the relationship of Employee and Employer existed between the parties on that date."

At the hearing under the Act, in response to being asked whether he was an employee of defendant Dior Builders., Inc., at the time of his fall, plaintiff responded that he was working for defendant Dior Builders, Inc., and that he was a subcontractor on the project at lot 16 in Inverness, Illinois, at the time of his fall. After a relevancy objection by defendants' attorney, the arbitrator asked whether there was an issue as to the existence of an employer-employee relationship. In response, plaintiff's attorney stated "[n]o there is not" and indicated that he was questioning plaintiff on the issue because he was uncertain as to plaintiff's employment status and whether defendant Dior Builders, Inc., was a general contractor or a subcontractor. Defendants' attorney stated then that the parties stipulated to an employer-employee relationship between the parties and the arbitrator responded "[l]ets not get into any other issues."

The hearing was continued until March 31, 1992, at which time defendant Peter DiIorio testified that he was president of Dior Builders, Inc., and that he held 50% shareholder interest in the company and his wife owned the other 50%. Defendant Dior Builders, Inc., builds custom homes and, over the last four years, had built approximately 30 custom homes in the area around Inverness, Illinois. He stated that on March 12, 1990, defendant Jim Hansen was employed as the painting foreman by defendant Dior Builders, Inc., and had been so employed for approximately $2^{1}/_{2}$ years.

Jim Hansen testified that on March 12, 1990, he was employed by defendant Dior Builders, Inc., and had been so employed for over a year prior to March 12, 1990.

In addition, at the hearing held on March 31, 1992, plaintiff's attorney again executed a stipulation which provides, in pertinent part:

"Petitioner claims that the Petitioner and Respondent were on the 12th day of March, 1990, operating under the provisions of the Workers' Compensation and Occupational Diseases Act of the State of Illinois and that the relationship of Employee and Employer existed between the parties on that date."

On June 22, 1993, the arbitrator rendered a memorandum of decision which found, *inter alia*:

"On March 12, 1990, the Respondent Dior Builders was operat-

ing under and subject to the provisions of the Illinois Workers' Compensation Act; and on this date the relationship of employee and employer existed between the Petitioner Michael Esposito and said Respondent; on the above mentioned date the Petitioner sustained accidental injuries which arose out of and in the course of employment by the Respondent."

The arbitrator also awarded plaintiff the sum of $99,233.71. Plaintiff did not appeal the specific finding by the arbitrator regarding the existence of an employer-employee relationship. Subsequently, defendants filed a petition for review with the Commission.

On November 16, 1993, plaintiff's discovery deposition was taken. At the discovery deposition, plaintiff tendered answers to defendants' interrogatories. Plaintiff had been previously ordered by the trial court to respond to defendants' interrogatory No. 5, which asked whether he was self-employed on the date of the alleged occurrence. In response to the interrogatory, plaintiff stated the following:

"Plaintiff worked as an uninsured subcontractor doing painting at Lot 16 of the Glencrest subdivision on Glencrest Drive, Inverness, Barrington Township, Cook County, Illinois, on the day of the occurrence. Pursuant to Section 1(a)(3) of the Illinois Worker's Compensation Act, I am entitled to worker's compensation benefits from the general contractor given the contractor's status as a general contractor insured with worker's compensation insurance and given my status as an uninsured subcontractor. However, no Federal or State taxes were withheld from paychecks. Therefore, the question of whether I was self-employed gives rise to factual issues to be determined by a jury, given my entitlement to worker's compensation benefits from the general contractor, despite my being a subcontractor doing painting. Solely for purposes of the instant Structural Act suit, I believe I was a self-employed independent contractor."

During the discovery deposition of plaintiff, plaintiff was specifically asked "[a]t the date, time and place alleged in the complaint, were you self employed [sic]?" In response, plaintiff replied "I don't know." Plaintiff further testified that he was a subcontractor at the time and place alleged in the complaint. He stated that he was a subcontractor because when he was paid, he did not have any taxes withheld, nor did he have any insurance, or benefits, and he was not the member of any union at the time alleged in the complaint. He also used his own tools. At the time that he began to work for defendant Dior Builders, Inc., he understood that no taxes would be withheld from his wages and that no type of benefits would be provided.

However, plaintiff also indicated that, before March 1990, he was employed with defendant Dior Builders, Inc., and that he had first

become employed by defendant Dior Builders, Inc., in August 1989. In addition, plaintiff stated that he had worked for defendant Dior Builders, Inc., for seven months, his supervisor was defendant Jim Hansen, he was paid weekly by defendant Dior Builders, Inc., defendant Peter DiIorio gave plaintiff instruction at jobs, and plaintiff supplied a substantial amount of his own painting equipment. Plaintiff further indicated that he was a subcontractor on March 12, 1990, because when he was paid, he did not have any taxes withheld and did not receive any insurance or other benefits. He also testified that he used his own tools. However, at the time that he began to work for defendant Dior Builders, Inc., he understood that no taxes would be withheld from his wages and that no types of benefits would be provided.

On October 7, 1993, defendants filed a motion for summary judgment in their behalf. In the motion, defendants argued that sections 5(a) and 11 of the Act provide that the Act is the exclusive remedy for workers injured on the job and that any employee who sustains a work-related injury is barred from seeking a common law or statutory remedy against his employer or co-employee. Defendants claimed that they were entitled to summary judgment in their behalf because plaintiff had applied for and received worker's compensation under the Act and, in doing so, maintained that he was an employee of defendant Dior Builders. As such, defendants maintained that plaintiff was precluded from adopting an inconsistent position relative to his employment status in a civil case upon the principles of collateral estoppel and *res judicata.*

On November 9, 1993, plaintiff filed a response to defendants' motion for summary judgment. In the response, plaintiff argued that defendants' motion for summary judgment should be denied because a genuine issue of material fact existed as to whether plaintiff's claim is barred by sections 5(a) and 11 of the Act. Plaintiff further maintained that he was an uninsured subcontractor able to recover worker's compensation benefits from defendants under section 1(a) of the Act. Plaintiff claimed that he was not an employee of defendant, but was still able to recover damages from defendants under the Act because of his status as an uninsured contractor.

On January 10, 1994, the trial court entered an order granting defendants' motion for summary judgment on the basis of *res judicata* and/or collateral estoppel not foreclosing other potential grounds for granting the motion.

On February 8, 1994, plaintiff filed a timely notice of appeal from the trial court's order of January 10, 1994, granting defendants' motion for summary judgment.

OPINION

Plaintiff's sole contention on appeal is that the trial court erred in granting defendants' motion for summary judgment.

Plaintiff argues that a genuine issue of material fact exists regarding his employment status and that his claims are not barred by *res judicata* and collateral estoppel. Plaintiff maintains that the issue regarding his employment status, raised in the present case, was not raised at the Commission and, as a result, it was never before the Commission for a decision on the merits. Plaintiff asserts that, unlike his claim before the Commission, his employment status is at issue in the instant case. Plaintiff claims that since *res judicata* and collateral estoppel require a showing of identical issues and a final judgment, those legal doctrines are inapplicable to the instant case because the issues in plaintiff's worker's compensation case are not identical to those in the instant case and plaintiff's claim is still under review at the Commission. Plaintiff further asserts that the arbitrator's decision was not the final decision of the Commission because defendants have filed a review of the arbitrator's decision and the arbitrator's decision is not the final decision of the Commission when a review has been filed.

Plaintiff also argues that his claim is not barred by the Act. While plaintiff acknowledges that the exclusive remedy provision of the Act provides that no common law or statutory right to recover damages from an employer for any injury sustained while on duty, other than compensation provided for in the Act, is available to an employee covered by the Act, plaintiff maintains that he may pursue his claims under the statutory employer exception to the exclusive remedy provision of the Act. In so arguing, plaintiff relies upon our supreme court's decision in *Laffoon v. Bell & Zoller Coal Co.* (1976), 65 Ill. 2d 437, 447, 359 N.E.2d 125.

In addition, plaintiff contends that defendants Peter DiIorio and Jim Hansen were not co-workers of plaintiff at the time of his fall. Plaintiff argues that he is not an employee of defendant and, as a result, defendants Peter DiIorio and Jim Hansen cannot be his co-workers. Plaintiff further points out that defendant Peter DiIorio has testified to being president of defendant Dior Builders, Inc., and that defendant Jim Hansen was a foreman working for defendant Dior Builders, Inc., on March 12, 1990. Plaintiff claims that defendant Peter DiIorio was also a foreman at the jobsite and, as such, these two individuals are proper parties who may be liable for plaintiff's injuries under the Structural Work Act.

Initially, we note that summary judgment is to be encouraged as an aid to the expeditious disposition of a lawsuit. (See *Lavat v. Fruin*

*Colnon Corp.* (1992), 232 Ill. App. 3d 1013, 1023, 597 N.E.2d 888.) A movant may be granted summary judgment where all of the pleadings, discovery materials, admissions, and all permissible inferences, analyzed in the light most favorable to the nonmovant, so clearly favor the movant that no fair-minded individual could dispute the movant's right to judgment in his or her favor. (See *Lavat*, 232 Ill. App. 3d at 1022.) On appeal, the trial court's decision to grant summary judgment will be affirmed only if, after examining the record, there is no genuine issue as to any material fact and the movant was entitled to judgment as a matter of law. (See *Lavat*, 232 Ill. App. 3d at 1022.) A reviewing court may sustain the decision of the trial court on any grounds called for by the record, regardless of whether the trial court made its decision on a proper ground. (See *National Bank v. Westinghouse Electric Corp.* (1992), 235 Ill. App. 3d 697, 703-04, 600 N.E.2d 1275.) For the following reasons, we conclude that the trial court correctly granted defendants' motion for summary judgment in their favor.

Section 5(a) of the Act provides, in pertinent part:

> "No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent on him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." 820 ILCS 305/5(a) (West 1992).

In addition, section 11 of the Act provides, in relevant part:

> "The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer *** for accidental injuries sustained by any employee arising out of and in the course of the employment ***." 820 ILCS 305/11 (West 1992).

In an action against an employer or its insurer, section 5(a) requires exclusive resort to the worker's compensation remedy for any injury arising out of and in the course of the employment which is covered by a provision of the Act. (See *Paluch v. Dever* (1993), 243 Ill. App. 3d 334, 337, 612 N.E.2d 36.) To escape the bar of sections 5 and 11 of the Act, plaintiff must demonstrate that the injury: (1) was not accidental; (2) did not arise from his or her employment; (3) was not received during the course of employment; or (4) was not compensable under the Act. (See *Paluch*, 243 Ill. App. 3d at 337.) For the

reasons that follow, we hold that, based on the principles of *res judicata*, plaintiff's election to pursue worker's compensation benefits under the Act precludes him from advancing an inconsistent position in the instant civil litigation as a matter of law.

The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. (See *Paluch*, 243 Ill. App. 3d at 338.) Further, the bar extends not only to what has actually been determined in the former proceeding, but also to any other matters properly involved by subject matter which could have been raised and determined. (See *Paluch*, 243 Ill. App. 3d at 338.) The proper test to determine the identity of causes of action for *res judicata* purposes is whether actions are based upon a common core of operative facts, or whether the same evidence would sustain both actions. See *Paluch*, 243 Ill. App. 3d at 338.

In *Paluch*, the plaintiff, a widow of a deceased worker, sought common law damages against defendants. (See *Paluch*, 243 Ill. App. 3d at 335.) In her complaint, plaintiff maintained that the decedent was an independent contractor at the time that the injuries occurred resulting in his death. (See *Paluch*, 243 Ill. App. 3d at 336.) Defendants moved for summary judgment and argued that plaintiff's claim in the civil action was barred by *res judicata* and collateral estoppel because plaintiff had filed a worker's compensation claim against defendant Northwest Tuckpointing Corporation (Northwest) and subsequently received a worker's compensation award. (See *Paluch*, 243 Ill. App. 3d at 335.) The arbitrator's memorandum of decision found that, on the date that the decedent sustained accidental injuries resulting in his death, the relationship of employee and employer existed between the decedent and defendant Northwest. (See *Paluch*, 243 Ill. App. 3d at 335.) The trial court granted defendants' motion for summary judgment. (See *Paluch*, 243 Ill. App. 3d at 335.) On appeal to this court, plaintiff argued that the trial court erred in granting defendants' motion for summary judgment because a genuine issue of material fact existed regarding the decedent's employment status. (See *Paluch*, 243 Ill. App. 3d at 335.) This court held that the trial court correctly determined that, based on the principles of *res judicata*, plaintiff's election to pursue worker's compensation benefits for the death of the decedent precluded her from advancing an inconsistent position in the civil litigation as a matter of law. (See *Paluch*, 243 Ill. App. 3d at 337-38.) This court reasoned that "plaintiff's attempt to relitigate the employment issue

was barred by *res judicata*, since that action ha[d] been conclusively decided before the Industrial Commission." *Paluch*, 243 Ill. App. 3d at 338.

■ During discovery of the instant litigation, although plaintiff testified at his discovery deposition that he first became employed with defendant Dior Builders, Inc., plaintiff maintained that he was an uninsured subcontractor. However, in the worker's compensation case before the Commission, plaintiff executed an application for adjustment of claim wherein he named defendant Dior Builders, Inc., as his employer. In addition, on April 30, 1991, and on March 31, 1992, plaintiff's counsel executed a stipulation at plaintiff's request indicating that, at the time that plaintiff fell, plaintiff and defendant Dior Builders, Inc., were operating under an employee-employer relationship. On June 22, 1993, the arbitrator issued a memorandum of decision which found that such a relationship existed. It is undisputed that plaintiff applied for and received worker's compensation benefits pursuant to the Act. Thus, as in *Paluch*, plaintiff's attempt to relitigate the employment issue is barred by *res judicata* because that action has been decided by the Commission.

■ Moreover, relative to plaintiff's civil claim against defendants Peter DiIorio and Jim Hansen, we conclude that because section 5(a) of the Act prohibits one employee from suing a co-employee, the trial court did not err in entering summary judgment for these defendants. See 820 ILCS 305/5(a) (West 1992).

■ We find plaintiff's reliance on *Laffoon* to be misplaced. In *Laffoon*, our supreme court held that section 5(a) of the Act does not provide a general contractor with immunity from an action for damages by an employee of an uninsured subcontractor when they are required to pay compensation benefits to that employee under section 1(a) of the Act, but rather that section 5(a) confers immunity upon employers only from common law or statutory actions for damages by their immediate employees. (See *Laffoon*, 65 Ill. 2d at 447.) However, in the present case, unlike in *Laffoon*, plaintiff was an immediate employee of defendant Dior Builders, Inc., and, as such, under *Laffoon*, section 5(a) of the Act confers immunity upon defendant Dior Builders, Inc., from common law or statutory actions for damages by plaintiff. See *Laffoon*, 65 Ill. 2d at 447.

■ We also disagree with plaintiff's contention that because, in the worker's compensation case, defendants filed a petition for review with the Industrial Commission, the issue regarding plaintiff's status as an employee is not final. Although it is true that, in the worker's compensation case, defendants filed a petition for review with the Industrial Commission, the issues before the Industrial Commission

are whether the plaintiff was injured at work and the amount of the benefits awarded. Significantly, neither plaintiff nor defendants specifically appealed the arbitrator's finding as to the existence of an employer-employee relationship. The Commission may consider, and oral arguments will be limited to, only those issues raised in *both* the review proceedings stipulation form or its equivalent, *and* in the party's statement of exceptions and supporting briefs. (See 50 Ill. Adm. Code § 7040.70(d) (1985) (as amended at 9 Ill. Reg. 16249 (proposed effective date October 15, 1985), and corrected at 9 Ill. Reg. 17459 (adopted October 25, 1985)); see also *Christman v. Industrial Comm'n* (1989), 180 Ill. App. 3d 876, 882, 536 N.E.2d 773.) However, in the present case, neither plaintiff nor defendants appealed the arbitrator's finding that an employer-employee relationship existed. As such, we conclude that the arbitrator's decision as to the existence of an employer-employee relationship between the parties was final for purposes of *res judicata*.

Accordingly, for all of the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.